IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CHARMAINE CRISTEL HUBBARD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-00588-BP |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

The Commissioner of Social Security decided Charmaine Hubbard is not entitled to Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI") because she is not disabled. Hubbard claims substantial evidence does not support the Commissioner's decision because he improperly weighed medical-opinion evidence that proves her disability. Finding no error, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** this case **with prejudice**.

I.   BACKGROUND

In 2017, Hubbard applied for DIB and SSI under Titles II and XVI of the Social Security Act ("SSA"), respectively. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 23-1 at 190-203. She reported her disabilities as follows: "Knee Problem, Ankle Problem, Hand/Wrist/Arm Problem, High Blood Pressure." Tr. 191; *see also id.* at 244. The Commissioner denied Hubbard's applications initially and upon reconsideration. *Id.* at 71-112. Hubbard sought review from an Administrative Law Judge ("ALJ") (*id.* at 131-32), who conducted a hearing (*id.* at 29-70) and affirmed the Commissioner's decision. *Id.* at 10-22.

After the Social Security Appeals Council denied further administrative review (*id.* at 1-3), Hubbard filed this civil action seeking judicial review of the Commissioner's final decision under 42 U.S.C. §§ 405(g), 1383(c)(3). ECF No. 1; *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review."). The parties consented to proceed before the undersigned Magistrate Judge. ECF Nos. 16 to 16-1; *see generally* 28 U.S.C. § 636(c). Hubbard raises one issue for review.

## II.     STANDARD OF REVIEW

Titles II and XVI of the SSA govern the DIB and SSI programs, respectively. *See* 42 U.S.C. §§ 401-434, 1381–1383f. Claimants seeking benefits under either program must prove they are "disabled" within the meaning of the SSA. *See Hollis v. Bowen*, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988) (stating the "relevant law and regulations governing the determination of disability under a claim for [DIB] are identical to those governing the determination under a claim for [SSI]"). A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord id.* § 1382c(a)(3)(A). To determine whether a claimant is disabled and thus entitled to benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a).

First, the claimant must not be presently doing any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* §§ 404.1572, 416.972. Second, the claimant must have a severe impairment or combination of impairments. *Id.* §§ 404.1520(a)(4)(ii),

416.920(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1).

Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers her past relevant work ("PRW"). *See id.* §§ 404.1520(a)(4), (e)-(f), 416.920(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite her limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* §§ 404.1560(b)(1); 416.960(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her PRW considering her RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to

support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III. ANALYSIS

The ALJ applied correct legal standards and reached a decision that substantial evidence supports. *See Leggett*, 67 F.3d at 564. Hubbard does not challenge the ALJ's findings at steps one through three in the evaluation process, namely she: (1) has not engaged in substantial gainful activity since August 2017; (2) has severe impairments of cervical and lumbar facet arthropathies, cervical and lumbar degenerative disc disease, chronic pain syndrome, and obesity; and (3) has no impairments or combination of impairments that qualify under the federal regulatory list. Tr. 12-16. But she challenges the ALJ's RFC determination, set forth below:

> [T]he claimant has the RFC to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk for six hours in an eight-hour workday; changing positions at 30 minute intervals after standing or walking; frequently operate foot controls bilaterally; frequently reach overhead with the right upper extremity and occasionally with the left upper extremity; frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; frequently balance, kneel, and crouch; occasionally stoop and crawl; occasional exposure to

>   unprotected heights and vibrations; and frequent operation of a motor vehicle. In addition to normal breaks, the claimant will be off task five percent of the time in an eight-hour workday.

*Id.* at 16-17. The ALJ concluded that, while Hubbard's RFC precluded her from performing PRW under step four, her RFC permitted her to perform jobs that exist in significant numbers in the national economy under step five, including Ticket Printer and Tagger, Cashier II, and Retail Marker. *Id.* at 20-21. Consequently, Hubbard was not disabled and entitled to benefits under the SSA. *Id.* at 22.

Hubbard claims the "ALJ's RFC determination is unsupported by substantial evidence because he failed to properly weigh the opinion of treating medical source Alicia Wilkerson, D.O." ECF No. 27 at 4. It is undisputed Dr. Wilkerson authored a medical opinion that the ALJ found unpersuasive in determining Hubbard's RFC. Disputed is whether the ALJ explained why the opinion was unpersuasive, given SSA regulations stating the ALJ "will articulate . . . how persuasive" he finds "all of the medical opinions" in the record. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The ALJ said the opinion was unpersuasive because it lacked treatment notes and was extreme:

>   Dr. Wilkerson stated that the claimant can only sit for one hour and stand/walk for one hour total in an eight-hour workday. She will need to take an unscheduled break every hour for 15 minutes. She can only occasionally lift and carry less than 10 pounds. Finally, she will be absent from work more than four times a month. (Exhibit 10F/2-3; 2A/6-7). This opinion is not persuasive. Dr. Wilkerson's treatment notes are not in the file for me to review. Furthermore, and perhaps more pertinent, Dr. Wilkerson's opinions are extreme when compared to the balance of the medical evidence of record.

Tr. 19. Hubbard contends this discussion "failed to explain how the evidence was not supportive or consistent with Dr. Wilkerson's opinions." ECF No. 27 at 15.

The words "supportive" and "consistent" invoke special meaning under SSA regulations. *See* 20 C.F.R. §§ 404.1520c, 416.920c. They are listed as "the most important factors" the ALJ is

5

to consider when articulating a medical opinion's persuasiveness. *Id.* §§ 404.1520c(b)(2), (c), 416.920c(b)(2), (c). Accordingly, the ALJ's decision "will explain how [he] considered the supportability and consistency factors for a medical source's medical opinions." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). Hubbard says the ALJ's explanation does not satisfy this regulatory requirement. ECF Nos. 27 at 13-15; 31 at 1-4.

"[T]here is little authority discussing what an ALJ must do to adequately 'explain' supportability and consistency or what happens when those discussions are missing." *Moore v. Saul*, No. 3:20-cv-48-DPJ-MTP, 2021 WL 754833, at *3 n.1 (S.D. Miss. Feb. 26, 2021). Hubbard submits as instructive this Court's decision in *William T. v. Comm'r of Soc. Sec.*, No. 6:18-cv-0055-BU, 2020 WL 6946517 (N.D. Tex. Nov. 25, 2020). ECF Nos. 27 at 15; 31 at 2. There, the ALJ's explanation was insufficient because he "failed to discuss, cite, or even mention" a medical opinion that was inconsistent with the RFC. *William T.*, 2020 WL 6946517, at *7. It was thus "impossible to know whether the ALJ properly considered that opinion, which directly affects the RFC determination." *Id.* By contrast, Hubbard does not dispute (nor could she) that the ALJ discussed, cited, and mentioned Dr. Wilkerson's opinion, as evidenced in the block quote above. This distinction is significant, as the Court in *William T.* noted the ALJ's failure five times in reversing and remanding for further administrative proceedings. *Id.* at *5-7.

Unlike in *William T.*, the question here is not whether the ALJ explained Dr. Wilkerson's opinion (he did), but whether he *sufficiently* explained the opinion. Generally, there are no formalistic rules governing how an ALJ must articulate his decision. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). Nor is perfection the benchmark in administrative proceedings. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). At a minimum, the ALJ's discussion must give enough reasons to permit meaningful judicial review. *Kinney v. Astrue*, No. 5:09-cv-00008-C-BG,

2009 WL 2981907, at *3 (N.D. Tex. Aug. 28, 2009) (citing *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007)), *rec. adopted*, 2009 WL 2981907, at *1 (N.D. Tex. Sept. 17, 2009). The ALJ's discussion of Dr. Wilkerson's opinion permits meaningful judicial review, even as to the supportability and consistency factors.

The ALJ sufficiently explained "consistency" when he stated Dr. Wilkerson's opinion is "extreme when compared to the balance of the medical evidence of record." Tr. 19; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (defining "Consistency"). Alone this description may appear conclusory, but the statement follows the ALJ's immediately preceding discussion of two state agency medical consultant ("SAMC") opinions. *See* Tr. 18-19. While the SAMCs opined Hubbard "is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently," *id.* (citing Tr. 75-77, 97-99, 107-09), Dr. Wilkerson stated she "can only occasionally lift and carry less than 10 pounds." *Id.* at 19 (citing Tr. 411). And though the SAMCs determined Hubbard can "stand and/or walk about six hours and sit about six hours in an eight-hour workday," *id.* at 18-19 (citing Tr. 75-77, 97-99, 107-09), Dr. Wilkerson stated she "can only sit for one hour and stand/walk for one hour total in an eight-hour workday." *Id.* at 19 (citing Tr. 411). Describing Dr. Wilkerson's opinion as extreme explained its inconsistency in the context of the ALJ's entire RFC discussion, including that of the SAMC opinions.

The ALJ also sufficiently explained "supportability" when he noted "Dr. Wilkerson's treatment notes are not in the file for me to review." *Id.* at 19. Supportability depends on how "relevant the objective medical evidence *and supporting explanations* presented by a medical source are to support his or her medical opinion." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (emphasis added). An opinion is unsupported if the physician "did not provide a detailed explanation for [the] opinion" or if "the physician's own treatment notes do not support the

7

physician's opinion." *Starman v. Kijakazi*, No. 2:20-cv-00035-SRC, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (applying 20 C.F.R. § 416.920c). Here, Hubbard offered no treatment notes supporting Dr. Wilkerson's opinion for the ALJ to consider. By identifying this gap, the ALJ conveyed Dr. Wilkerson's opinion is unsupported because it lacks any analysis underlying its conclusions.

Dr. Wilkerson's opinion itself is in questionnaire format, with the doctor answering questions about Hubbard's medical impairments by circling numbers, marking empty boxes, and writing short phrases where prompted. *See* Tr. 410-12. Such an opinion is "not entitled to considerable weight" without supporting explanatory notes, objective tests, or examinations. *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011). Despite Dr. Wilkerson being prompted to "attach all relevant treatment notes, laboratory and test results" to the questionnaire, the doctor did not attach any. *See* Tr. 410-12. Unlike in *William T.*, where it was "impossible" for the Court to know whether the ALJ properly considered an opinion, *William T.*, 2020 WL 6946517, at *7, here it is possible, if not certain, the ALJ found Dr. Wilkerson's opinion unsupported because it lacked accompanying treatment notes.

Hubbard alternatively contends the ALJ had a duty to develop the record and obtain the treatment notes himself. ECF Nos. 27 at 14-15; 31 at 3-4. This argument is unavailing for two reasons. First, claimants are "responsible for providing the evidence [the ALJ] will use to make a finding about [their RFC]." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). This makes sense because claimants bear the burden of proof until step five in the sequential evaluation process, and the RFC determination precedes step five. *Audler*, 501 F.3d at 448; *see also* 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1) ("In general, you have to prove to us that you are . . . disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are . . . disabled.").

Hubbard leaves unaddressed why she did not provide Dr. Wilkerson's treatment notes to the ALJ or why that was not her burden. *See* ECF Nos. 27, 31.

Second, Hubbard acknowledges the SSA regulation on which her contention depends no longer exists. ECF No. 27 at 14. The regulation, 20 C.F.R. § 404.1512(e), previously directed ALJs to recontact a treating medical source who submitted inadequate evidence. *See Newton v. Apfel*, 209 F.3d 448, 453, 457 (5th Cir. 2000) (quoting and construing the former § 404.1512(e)). But later SSA regulatory amendments replaced subsection (e) with a more discretionary standard. *See Perry v. Colvin*, No. 13-cv-2252-P, 2015 WL 5458925, at *7 & n.9 (N.D. Tex. Sept. 17, 2015). "[U]nder current regulations, the ALJ *may* re-contact a treating physician or other medical source *if* there is insufficient evidence to determine whether the claimant is disabled." *Id.* (emphases added); *see also* 20 C.F.R. §§ 404.1520b, 416.920b. Here, there was sufficient—in fact, substantial—evidence informing the ALJ's RFC determination, precluding any duty the ALJ may have had to contact Dr. Wilkerson. In addition to the two SAMC opinions, the ALJ's RFC explanation cited and discussed physical examinations, progress notes, and the other evidentiary sources discussed below.

The record reflected Dr. Harold Nachimson performed a physical examination showing Hubbard with full range of motion in her back, arms, and legs. Tr. 18 (citing Tr. 312). A similar exam by Dr. Michael Duffy noted Hubbard "had no difficulty acquiring a full, upright position without getting out of the chair," and "her gait was balanced, albeit slow and purposeful." *Id.* (citing Tr. 326-27). While Hubbard "had limited range of motion of the cervical and lumbar spine and she had a positive straight leg raising on the left," her "upper extremities strength was symmetrically present in all muscle groups tested; right wrist was 5/5, and the left wrist was 5/-5." *Id.* (citing Tr. 327). Progress notes from Dr. Giovanni Geslani twice reported Hubbard as follows:

9

"no spinal tenderness to palpation over the spinous process, her gait was normal, there were no knee effusions, and she exhibited a full range of motion of the bilateral shoulders, elbows, wrists, hands, and hips." *Id.* (citing Tr. 394, 405). A left shoulder x-ray "revealed minimal degenerative changes in the left shoulder," *id.* (citing Tr. 316), and a left knee x-ray likewise "showed minimal degenerative change." *Id.* (citing Tr. 317). A lumbar-spine MRI indicated "no evidence of acute process in the lumbar spine and only mild multilevel degenerative changes." *Id.*; *see id.* at 471-72. Finally, a cervical-spine MRI "revealed a small Schmorl's node and mild interior endplate edema at C6, likely related to mild-to-moderate disc height loss, small central disc extrusion at C6-7, mild right foraminal stenosis at C2-C5, and moderate bilateral foraminal stenosis at C7-T1." *Id.* at 18 (citing Tr. 473-74).

Weighing this evidence, the ALJ found Hubbard limited, though not as limited as she claimed, and he determined the RFC accordingly. *Id.* at 17. This Court cannot reweigh the evidence, *Harris*, 209 F.3d at 417, or invade the ALJ's province to determine Hubbard's RFC. *Ripley*, 67 F.3d at 557. Instead, the Court's review remains "highly deferential." *Owen v. Kijakazi*, No. 21-60545, 2022 WL 118427, at *1 (5th Cir. Jan. 11, 2022) (quoting *Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir. 2005)). It will only vacate a judgment if "the substantial rights of a party have been affected." *Mays*, 837 F.2d at 1364. There is no indication Hubbard's substantial rights have been affected. The ALJ sufficiently explained why Dr. Wilkerson's medical opinion was unpersuasive, and he had no duty to contact Dr. Wilkerson about the matter. The ALJ also gave Hubbard and her attorney the right to object. Tr. 32. At the administrative hearing, he asked them whether they "had a chance to review the record" and whether there were any "[o]ther documents you all want to offer." *Id.* In response, Hubbard and her lawyer said they had reviewed the record,

10

but they said nothing of Dr. Wilkerson's opinion or its lack of treatment notes. *Id.* at 32-33. The Court thus finds no error in these proceedings warranting reversal.

### IV. CONCLUSION

Because the ALJ applied the correct legal standards and substantial evidence supports his decision, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** this case **with prejudice**.

**SIGNED** on January 21, 2022.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE